## SELLERS v STATE

Ohio Appeals, 6th Dist, Huron Co

No 326. Decided Oct 29, 1934

Young & Young, Norwalk, for plaintiff in error.

Ernest L. Wolff, Prosecuting Attorney, Norwalk, Edward Judy and Oscar L. Fleckner for defendant in error.

## OPINION

By RICHARDS, J.

The compliance with various sub-sections of §8624 GC is required in order that transactions may be lawfully carried on in securities, and the punishment for a violation of those requirements is provided in §8624-25 GC. Transactions in securities which are exempt from the act are covered by §8624-25 GC, the pertinent parts of which section read as follows:

"The following transactions in securities may be carried on and completed without compliance with the provisions of §§8, 9, 10, 13 or 14 of this act:

(1) A sale of securities by a bona fide owner, not the issuer thereof, such sale being made in good faith and not for the purpose of avoiding the provisions of this act and not being made in the course of repeated and successive transactions of a like or similar character;"

Sellers contends that he was the bona fide owner of the stock of The International Gold Producers, Inc., which he sold to Maynard and that the sale was made in good faith, not for the purpose of avoiding the provisions of the Act, and was not made in the course of repeated and successive transactions of a similar character. The State contends that before the accused can take advantage of the exemptions claimed by him, it must appear by a preponderance of the evidence that the facts showing his right to such exemptions exist and that such facts were not shown. This requirement is embraced within the concluding paragraph of §8624-25, GC, which reads as follows:

"In any indictment, complaint or information hereunder, it shall not be necessary to negative the existence of facts which would bring a security within the provisions of §§3 or 5 or would bring a transaction within the provisions of §§4 or 6, or to negative existence of facts which would bring a transaction within the exceptions of §47, and the burden of proof shall be upon the party claiming the benefits of any such section."

If Sellers was not the bona fide owner of the stock at the time he made the sales to Maynard, he would come within the inhibition of the statute and the stock would be required to be registered by description or qualification under the provisions of the Ohio Securities Act. It was important, then, that the jury should ascertain whether, at the time of the sales, Sellers was the bona fide owner of this stock. He himself testified that he was such owner, but the certificates of stock which he contends he owned were not introduced in evidence nor were records of the company introduced showing him to be a stockholder. He testified that the company was organized at Denver, Colorado, in the spring of 1933, one of the three organizers being Ralph G. McFann. McFann was in the stock brokerage business and Sellers was one of his employes, engaged in the sale of stock of The International Gold Producers, Inc. Sellers testified that he sold a great deal of this stock during a period of three or four months, up to July 27, 1933, and received for his commission 20% of the amount received on such sales, and also a bonus of 50,000 shares of the stock, and that it was from these 50,000 shares that he made the sales to Maynard. The stock, he says, was listed on the Denver stock exchange. He claims that he quit the employment of McFann in selling stock of the company about July 27, 1933, because of the new Blue Sky Law, and that he left his certificate for 50,000 shares of stock in the possession of McFann, deposited in McFann's office, which office was also the transfer office of The International Gold Producers, Inc.

It is significant that the orders to purchase stock signed by Maynard and accepted by Sellers are directed to Ralph G. McFann, United States National Bank Building, Denver, Colorado, and contain the following language:

"I, the undersigned, agree to purchase from you ...... share of International Gold Producers, at a price of 10c per share. Total price $........."

A deputy sheriff of Huron County made the arrest of Sellers in New York City, and after the arrest had some conversation with Sellers in which Sellers made the following statement in relation to the money that he had received from Maynard:

"That he had sent part of the money which he received to Denver and part of it retained as his commission."

Clearly the defendant would not be selling on commission stock which he already

owned. It is true that the statement is denied by Sellers, but the weight of the evidence was for the jury to determine.

As the state introduced evidence sustaining the charges contained in the fifth, sixth, seventh and eighth counts of the indictment, the duty rested on Sellers to establish by a preponderance of the evidence that he was entitled to the benefits of the exemption which he claimed, pursuant to the provisions of the statute.

We have read all of the evidence contained in the bill of exceptions, and certainly can not find that the verdict is manifestly against the weight of the evidence.

The beneficient purpose of the General Assembly in passing the Ohio Securities Act is well stated in the course of the opinion by Mathias, J., in the case of **Groby v State, 109 Oh St, 543, 550,** in the following language:

"This legislation was enacted for the obvious purpose of guarding investors against fraudulent enterprises, to prevent sales of securities based only on schemes purely speculative in character, and to protect the public from swindling peddlers of worthless stocks in mere paper corporations. It should be so administered as to fully meet the purpose of its enactment."

We have examined all the claimed errors on which reliance is placed and find none to the prejudice of the plaintiff in error. The judgment will therefore be affirmed.

WILLIAMS and LLOYD, JJ, concur.